UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Robert Lee Golba | ) | In proceedings under |
| Annelle Y. Golba | ) | Chapter 7 |
| | ) | Case No. 09-17649-MER |
| _____ | ) | |
| Kelvin Knaub and | ) | |
| Holly Knaub | ) | |
| | ) | Adversary Action |
|       Plaintiffs, | ) | Case #: |
| vs. | ) | |
| | ) | |
| Robert Lee Golba and | ) | |
| Annelle Y. Golba | ) | |
| | ) | |
|       Defendants. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF PLAINTIFFS' CLAIMS
PURSUANT TO 11 U.S.C. § 523**

COME NOW the Plaintiffs Kelvin Knaub and Holly Knaub, by and through their attorneys undersigned, and for their Complaint against the Defendants hereby state as follows:

JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) in that a proceeding arising under Title 11, or arising in or related to a case under Title 11, may be commenced in the District in which such case is pending.

PROCEDURAL BACKGROUND

1.   Defendants reside at 8513 S. County Road 13, Fort Collins, CO 80525.  Defendants filed a Voluntary Petition for Relief under Chapter 7 on or about April 28, 2009.  The Defendants' § 341 Creditor's Meeting was held on or about June 12, 2009.

2.   Plaintiffs Kelvin Knaub and Holly Knaub (hereinafter "Knaubs") moved the Court for an unopposed extension of time to file an adversary action in the above captioned matter one or about July 28, 2009.  The Court granted the Knaubs' Motion and extended the time to file an adversary action in this matter until September 12, 2009.

GENERAL ALLEGATIONS

3.   Gemm Homes, LLC, ("Gemm") was in the business of building homes for sale to the public making Gemm a builder/vendor. At all times pertinent hereto, Greg Rollison was the Manager of Gemm.

4.   Gemm constructed a single-family residence on that certain parcel of real property located in Weld County, Colorado, commonly known as 1987 Birdie Drive, Milliken, Colorado (hereinafter the "Property.")

2

5.  Construction of the single-family residence on the Property began in the spring of 2001 and was completed on or about July 30, 2002.

6.  Greg Rollison was personally involved in, and supervised the construction of, the single-family residence on the Property.

7.  CDS Engineering Corporation was contracted by Gemm to design a foundation for a single family residence to be built on the Property.

8.  The foundation plan designed by CDS Engineering Corporation for the Property was an engineered spread footer type foundation system.

9.  Note 6 contained on the foundation plan for the Property designed by CDS Engineering Corporation provides that the foundation shall rest on undisturbed natural soil.  Note 6 further provides that if the foundation is placed on fill material, the fill shall be acceptable to the Engineer, and compacted to the Engineer's specifications.

10.  The foundation for the single-family residence on the Property does not rest on undisturbed natural soil.

11.  The foundation for the single-family residence on the Property is placed on fill material which was not inspected

by the Engineer, was not acceptable to the Engineer, and was not compacted to the Engineer's specifications.

12.   Note 13 contained on the foundation plan for the Property designed by CDS Engineering Corporation provides that the completed excavation shall be inspected by the Engineer to verify soils conditions.  Owner/Contractor shall notify Engineer 48 hours in advance of inspection.

13.   Greg Rollison was aware of the importance of open hole investigations prior to the construction of the house on the Property.

14.   The excavation for the foundation for the single-family residence on the Property was not inspected by the Engineer as required by Note 13 of the foundation plan designed by CDS Engineering Corporation for the Property.

15.   Greg Rollison actively participated in, gave specific direction for, and sanctioned the failures of Gemm to meet the requirements contained in Notes 6 and 13 of the foundation plan designed for the single-family residence constructed on the Property by CDS Engineering Corporation.

16.   Pursuant to a contract between Plaintiffs and Gemm dated on or about March 18, 2003, as amended on or about March 21, 2003, Plaintiffs purchased the Property from Gemm.

4

17.  Plaintiffs closed on the purchase of the Property from Gemm on or about May 1, 2003.

18.  Gemm transferred the Property to the Plaintiffs through a general Warranty Deed.

19.  Pursuant to the terms of the contract between the Plaintiffs and Gemm, the single-family residence on the Property was under a warranty from Gemm.

20.  After moving into the single-family residence on the Property, Plaintiffs noticed a crack in the drywall. Plaintiffs notified Gemm and Greg Rollison of the cracks.

21.  Representatives of Gemm informed the Plaintiffs that the cracks in the drywall were normal and not a concern.  Later, a representative of Gemm inspected the property and discovered a crack in the foundation.  Thereafter, representatives of Gemm placed epoxy in the crack in the foundation, stated that the crack was a normal occurrence, and made certain other minor warranty repairs to the Property.

22.  Several months after the crack in the foundation had been epoxied, more cracks appeared in the drywall of the residence on the Property.

23. Plaintiffs again contacted Gemm and Greg Rollison requesting that the problems be repaired.  Again, representatives of Gemm came to the Property and conducted warranty repairs. Following the repairs, problems persisted.

24. In the spring of 2006, drywall continued to crack, several doors stuck, and windows would not close properly.  At this point, it became apparent that the problems with the residence were not normal.

25. Plaintiffs repeatedly contacted Gemm and Greg Rollison requesting that the problems with the residence be addressed.

26. In response to the Plaintiffs' requests, Gemm and Greg Rollison contacted CDS Engineering Corporation requesting an engineering analysis be performed to determine the potential causes of the problems with the single-family residence on the Property.

27. In the spring of 2006, CDS Engineering Corporation drilled test holes in the Property to determine the composition of the soil material below the foundation for the residence.

28. The boring logs produced by CDS Engineering Corporation indicate that there is approximately 10-14 feet thick of

uncontrolled fill material below the foundation for the residence on the Property.

29. The foundation for the residence is settling creating a difference in elevation between the front and the rear of the residence of more than 2½ inches.

30. The settlement of the foundation for the residence is causing severe distress to the residence resulting in, but not limited to, drywall cracking, tile cracking, grout cracking, foundation cracking, doors sticking, windows sticking, gaps appearing around windows, as well as other damages and problems.

31. CDS Engineering Corporation forwarded information to Haywood Baker Denver Grout Company seeking a bid to underpin the foundation for the residence on the Property.

32. Haywood Baker Denver Grout Company did submit a bid to either underpin or mud jack the foundation for the residence on the Property. However, Haywood Baker Denver Grout Company would not issue a warranty for its work.

33. Robert Golba performed sales and marketing for Gemm beginning in 2005.

7

34. Robert Golba was aware of the issues with Plaintiffs' home and conducted an marketing analysis of the Property on behalf of Gemm.

35. Following the receipt of the bid from Haywood Baker Denver Grout Company, Gemm, Robert Golba, and Greg Rollison entered into negotiations with the Plaintiffs wherein Gemm offered to construct a new home for the Plaintiffs in exchange for receipt of the Property.

36. During the course of the negotiations regarding the construction of a new home for the Plaintiffs, a company known as Avalon Homes, LLC, was formed in Wyoming on or about February 14, 2007.

37. When it was formed the principals of Avalon Homes, LLC, were Robert Golba who owned 90% of the interest in Avalon Homes, LLC, and Greg Rollison's son, Miles Rollison who owned 10% of the interest in Avalon Homes, LLC.  Miles Rollison transferred his interest in Avalon Homes, LLC, to Robert Golba on or about July 25, 2007, at which time Robert Golba was the purported sole member of Avalon Homes, LLC.

38. During the course of the negotiations regarding the construction of a new home for the Plaintiffs, the name at the office of Gemm was changed to Avalon Homes, LLC.

8

39. Avalon Homes, LLC, assumed the contract between the Plaintiffs and Gemm, including all warranty obligations.

40. The final portions of the negotiations regarding the construction of a new home for the Plaintiffs were conducted at the offices of Avalon Homes, LLC, with Greg Rollison and Robert Golba participating in the negotiations.

41. A verbal agreement was reached between the Plaintiffs, Gemm/Avalon Homes, LLC, and Greg Rollison regarding the construction of a new home for the Plaintiffs.  The agreement provided that Gemm/Avalon Homes, LLC, and Greg Rollison would construct a new home for the Plaintiffs to be built on a lot purchased by Gemm/Avalon Homes, LLC, and Greg Rollison in the same subdivision where the Property was located in exchange for the Plaintiffs transferring the Property to Gemm/Avalon Homes, LLC, and Greg Rollison upon completion of the new home.

42. Avalon Homes, LLC, expressly and impliedly assumed the liabilities of Gemm to the Plaintiffs.

43. A lot was placed under contract by Gemm/Avalon Homes, LLC, for the purpose of constructing a new residence for the Plaintiffs.  However, Gemm/Avalon Homes, LLC, failed to

9

complete the purchase of the lot and breached the agreement with the Plaintiffs.

44. Immediately after the creation of Avalon Homes, LLC, the employees of Gemm overnight became the employees of Avalon Homes, LLC.  The assets of Gemm became the assets of Avalon Homes, LLC.  Building lots owned by either Gemm or another entity controlled by Greg Rollison in the Laramie, Wyoming, were transferred to Avalon Homes, LLC, without the payment of any consideration.

45. Greg Rollison has been involved in the daily affairs of Avalon Homes, LLC, even though he and Robert Golba represented to Gemm's creditors, including the Plaintiffs, that Greg Rollison and Gemm have had no connection to or interest in Avalon Homes, LLC.

46. The representations by Greg Rollison and Robert Golba that Greg Rollison and Gemm have had no connection to or interest in Avalon Homes, LLC, have included statements to that effect in sworn testimony and affidavits.

47. Following its creation, Avalon Homes, LLC, opened a business checking account at Bank of Choice in Fort Collins, Colorado.

48.   Robert Golba has stated in a sworn affidavit that other than some office equipment and furniture that was part of an office lease, Avalon Homes, LLC, has not acquired or used any portion of the operations, affairs, and assets of Gemm.

49.   Upon information and belief, the monies used to open Avalon Homes, LLC's account at Bank of Choice, $23,784.11, were monies provided by either Gemm, Greg Rollison, or another entity controlled by Greg Rollison.

50.   The Quickbooks records of Avalon Homes, LLC's account at Bank of Choice contain numerous transactions whereby monies from the account were used to pay Greg Rollison's personal expenses.  A limited sample of the types of expenses marked in Avalon Homes, LLC's records as being paid for Greg Rollison are:

a.   Blockbuster Video;

b.   REI;

c.   Fish's Liquormart;

d.   Cinemark USA;

e.   Tequila's Mexictequila's;

f.   Victoria's Secret;

g.   King Soopers;

h.   Whole Foods;

11

I.    Funky Trunk;

j.    Balloon Family; and,

k.    Bob's Fly Tying.

51.  The Quickbooks records also have numerous items where monies from Avalon Homes, LLC's, account at Bank of Choice were paid for "Miles in Europe" meaning Miles Rollison even though Avalon Homes, LLC, had no business interests in Europe.  The payments made to or on behalf of Miles Rollison occurred approximately 6 weeks after his transfer of his interest in Avalon Homes, LLC, to Robert Golba.

52.  The proceeds from construction loans for the purpose of constructing homes on lots located in Laramie, Wyoming, were deposited into Avalon Homes, LLC's account at Bank of Choice.

53.  Revenues generated from the sale of properties in Laramie, Wyoming, by Avalon Homes, LLC, were deposited into Avalon Homes, LLC's account at Bank of Choice.

54.  Payments from Avalon Homes, LLC's account at Bank of Choice were regularly made to the order of Greg Rollison and Golba Real Estate, an entity controlled by Defendants.  The aforementioned payments were commonly made on the same day and in equal amounts.

55. On several occasions when payments by Avalon Homes, LLC were being made to or for the Defendants and/or to or for the benefit of Greg Rollison, the payments were either done while the balance of Avalon Homes, LLC's account at Bank of Choice was negative or caused the balance to become negative.

56. Robert Golba has stated in a sworn affidavit that at no time was he involved in the ownership, management, or control of Gemm.

57. The manager of Gemm was Vanguard Holdings, LLC.

58. Gemm and Vanguard Holdings, LLC, have executed guarantees for construction loans from Wyoming State Bank to Avalon Homes, LLC.

59. Robert Golba and Greg Rollison have signed the loan guarantees to Wyoming State Bank for Gemm and Vanguard Holdings LLC as members of Vanguard Holdings, LLC.

60. Robert Golba has stated in a sworn affidavit that none of the members, managers, or owners of Gemm were members or managers or owners of Avalon Homes, LLC, at any time.

61. Greg Rollison signed sales contracts and other documents wherein he represented that he was a manager of Avalon Homes, LLC.

13

62. At the model home owned by Avalon Homes, LLC, in Laramie, Wyoming, Robert Golba has made a representation that he and Greg Rollison are "partners."

63. Avalon Homes, LLC, is merely a continuation of Gemm.

64. The purpose for which Avalon Homes, LLC, was formed was to hinder, delay, and defraud Gemm's creditors including Plaintiffs.

65. Defendants and Greg Rollison have used Avalon Homes, LLC, as a vehicle for them to shield the assets of Gemm from its creditors, to generate monies based on the use of Gemm's assets to pay for their personal expenses, and to dissipate the assets of Gemm for their personal benefit.

66. On or about June 5, 2008, Robert Golba formed Avalon Homes of the West, LLC, which is a continuation of Gemm Homes, LLC and Avalon Homes, LLC.

67. Real property belonging to Avalon Homes, LLC, which once belonged to Gemm, was transferred to Avalon Homes of the West, LLC, for no consideration.

68. The proceeds from construction loans for the purpose of constructing homes on lots located in Laramie, Wyoming, were deposited into Avalon Homes of the West, LLC's account at Farmer's Bank in Fort Collins, Colorado.

14

69. Avalon Homes of the West, LLC, has used Avalon Homes, LLC's, Employer Identification Number in connection with a construction loan issued by Farmers Bank.

70. Revenues generated from the sale of properties in Laramie, Wyoming, by Avalon Homes of the West, LLC, were deposited into Avalon Homes of the West, LLC's account at Farmers Bank.

71. One of the purposes of the formation of Avalon Homes of the West, LLC, was to try and continue hiding the assets of Gemm/Avalon from its creditors.  Similar to the transformation of Gemm into Avalon Homes, LLC, Avalon Homes of the West, LLC, is a continuation of Avalon Homes, LLC, in every aspect.

72. In August, 2008, Robert Golba transferred his ownership interest in his residence located at 8513 South County Road, Fort Collins, Colorado, via Quit Claim Deed to his wife Annelle Golba for the express purpose of hindering, delaying and defrauding his creditors arising as a result of his acts connected to Gemm and Greg Rollison.

73. Defendants' Schedule B lists the interests in Avalon Homes, LLC, and Avalon Homes of the West, LLC, as being joint

15

assets of the Defendants.  Robert Golba has testified that
Annelle Golba is involved in all phases of his business.

74. Plaintiffs have fulfilled all their obligations underneath
their agreements with Gemm/Avalon Homes, LLC.

75. Plaintiffs have obtained estimates as to the costs to repair
the damages to the improvements located on the Property.
The total of the estimates are $184,818 without the costs
for engineering supervision.

FIRST CAUSE OF ACTION
11 U.S.C. § 523 (a)(2)(A)
(FALSE PRETENSES–FALSE REPRESENTATION)

76. Plaintiffs hereby incorporate the facts and allegations set
forth above in paragraphs 1 through 75 and further allege as
follows:

77. Defendant Robert Golba knowingly made false representations
that Greg Rollison, Gemm, or Vanguard Construction Services
at no time were involved in the ownership, management, or
control of Avalon Homes, LLC.

78. Defendant Robert Golba knowingly made false representations
that he had never been involved in the management or control
of Gemm.

79. Defendant Robert Golba knowingly made false representations
that Avalon Homes, LLC, had not acquired or used any portion

16

of the operations, affairs, and assets of Gemm with the exception of some office equipment and furniture that was part of an office lease.

80. Robert Golba intended that the representations set forth in paragraphs 77, 78, and 79 would deceive, hinder, delay, and defraud Gemm's creditors including the Plaintiffs.

81. Robert Golba intended that Gemm's creditors including the Plaintiffs would rely on the representations set forth in paragraphs 77, 78, and 79.

82. Plaintiffs justifiably relied on Robert Golba's statements to their detriment.

83. Plaintiffs have suffered damages in that the assets of Gemm were hidden, distributed to Defendants and others for their personal benefit, and dissipated making the assets and their proceeds unavailable to Gemm's creditors including Plaintiffs.

WHEREFORE, Plaintiffs request this Court enter judgment against Defendant exempting Plaintiffs' claims of indebtedness against Defendants from discharge in such amount as the entire amount of Plaintiffs' damages, plus costs of suit, and interest at the legal rate, and to provide such other and further relief as the Court deems appropriate.

17

SECOND CAUSE OF ACTION
11 U.S.C. § 523 (a)(2)(A)
(ACTUAL FRAUD)

84.   Plaintiffs hereby incorporate the facts and allegations set
      forth above in paragraphs 1 through 83 and further allege as
      follows:

85.   Defendants engaged in actual fraud by entering into a civil
      conspiracy with Greg Rollison and Gemm wherein they agreed
      to fraudulently convey the assets of Gemm into Avalon Homes,
      LLC, and then to Avalon Homes of the West, entities
      purported to be owned and controlled by Defendants, for the
      purpose of hindering, delaying, and defrauding Gemm's
      creditors including the Plaintiffs.

86.   The goal of hindering, delaying, and defrauding Gemm's
      creditors was accomplished when the Defendants participated
      in the fraudulent transfer of Gemm's assets to Avalon Homes,
      LLC, and then to Avalon Homes of the West, LLC.

87.   Following the transfer of the assets of Gemm into Avalon
      Homes, LLC, and then to Avalon Homes of the West, LLC, the
      assets and their proceeds were distributed to Defendants and
      others for their personal benefit.

88.   Plaintiffs have been damaged in that the assets of Gemm were
      hidden, distributed to Defendants and others for their

18

personal benefit, and dissipated making the assets and their proceeds unavailable to Gemm's creditors including Plaintiffs.

WHEREFORE, Plaintiffs request this Court enter judgment against Defendant exempting Plaintiffs' claims of indebtedness against Defendants from discharge in such amount as the entire amount of Plaintiffs' damages, plus costs of suit, and interest at the legal rate, and to provide such other and further relief as the Court deems appropriate.

THIRD CAUSE OF ACTION
11 U.S.C. § 523 (a)(4)
(BREACH OF FIDUCIARY DUTY)

89. Plaintiffs hereby incorporate the facts and allegations set forth above in paragraphs 1 through 88 and further allege as follows:

90. Robert Golba was a member of Vanguard Holdings, LLC, the manager of Gemm.

91. Gemm was an insolvent company during the time Robert Golba was a member of Vanguard Holdings, LLC.

92. Robert Golba participated in the transfer of Gemm's assets to entities which were purportedly owned or controlled by Defendants, Avalon Homes, LLC, and Avalon Homes of the West, LLC.

19

93.  Defendants received the distribution of Gemm's assets and
     their proceeds during the time Gemm was insolvent.

94.  Defendants favored their interests over those of Gemm's
     creditors, including Plaintiffs.

95.  Defendants owed a fiduciary duty to Gemm's creditors,
     including the Plaintiffs, not to divest Gemm's property for
     their personal benefit, to prefer themselves over other
     creditors, or to defeat Gemm's creditors' claims.

96.  Defendants engaged in actual fraud while Robert Golba acted
     in a fiduciary capacity by entering into a civil conspiracy
     with Greg Rollison and Gemm wherein they agreed to
     fraudulently convey the assets of Gemm into Avalon Homes,
     LLC, and then to Avalon Homes of the West, entities
     purported to be owned and controlled by Defendants, for the
     purpose of hindering, delaying, and defrauding Gemm's
     creditors including the Plaintiffs.

97.  The goal of hindering, delaying, and defrauding Gemm's
     creditors was accomplished when the Defendants participated
     in the fraudulent transfer of Gemm's assets to Avalon Homes,
     LLC, and then to Avalon Homes of the West, LLC.

98.  Following the transfer of the assets of Gemm into Avalon
     Homes, LLC, and then to Avalon Homes of the West, LLC, the

20

assets and their proceeds were distributed to Defendants and
others for their personal benefit.

99.   Plaintiffs have been damaged in that the assets of Gemm were
hidden, distributed to Defendants and others for their
personal benefit, and dissipated making the assets and their
proceeds unavailable to Gemm's creditors including
Plaintiffs.

WHEREFORE, Plaintiffs request this Court enter judgment
against Defendant exempting Plaintiffs' claims of indebtedness
against Defendants from discharge in such amount as the entire
amount of Plaintiffs' damages, plus costs of suit, and interest
at the legal rate, and to provide such other and further relief
as the Court deems appropriate.

Dated this 10th day of September, 2009.

MARCH, OLIVE & PHARRIS, LLC
*Original Signature on File*

s/   Stewart W. Olive
      Attorney at Law, AR 16134
      110 East Oak Street, Suite 200
      Fort Collins, CO  80524
      (970) 484-3990
      (970) 482-5719 facsimile
      stewart@olivelaw.com

Address of Plaintiffs:
1987 Birdie Drive
Milliken, CO 80543

21

## **CERTIFICATE OF MAILING**

     I hereby certify that on the 10th day of September, 2009, I filed through the ECF system and placed a true and correct copy of the attached and foregoing **COMPLAINT TO DETERMINE DISCHARGEABILITY OF PLAINTIFFS' CLAIMS PURSUANT TO 11 U.S.C. § 523** in the United States Mail, postage prepaid, addressed as follows:

Charles Schlosser
1888 Sherman Street
Suite 650
Denver, CO 80203

Gregory S. Bell
322 E. Oak Street
Fort Collins, CO 80524

Robert Lee Golba
Annelle Y. Golba
8513 S. County Road 13
Fort Collins, CO 80525

                          MARCH, OLIVE & PHARRIS, LLC
                          *Original Signature on File*

            s/   Kristine Smith, CLA
                      Certified Paralegal